UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LILIAN VALDEZ a/k/a LILIAN POLANCO,**<br><br>Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>Defendant. | Civ. No. 2:12-05911 (WJM)<br><br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Lilian Valdez a/k/a Lilian Polanco is a former airplane cleaner who suffers from glaucoma and various orthopedic ailments. Polanco applied for Disability Benefits and Supplemental Security Benefits, arguing that she became disabled on September 15, 2005. The Commissioner of Social Security (the "Commissioner") found that Polanco was disabled beginning on February 27, 2007, but was not disabled from September 15, 2005 through February 26, 2007. Polanco challenges the Commissioner's finding that she was not disabled from September 15, 2005 through February 26, 2007. For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

**I.   FACTS**

In 1986, Polanco began seeing halos, and she was diagnosed with Glaucoma. Administrative Transcript ("Tr.") at 145. Over the next ten years, she underwent three surgeries on her eyes. *Id.*

On April 26, 2006, Polanco filed a claim for Disability Insurance Benefits and Supplemental Security Income, alleging a disability beginning on September 15, 2005. Roughly one month after she filed her application, Polanco filled out a function report for the New York State Office of Temporary and Disability Assistance, in which she noted that she shopped, cleaned, did laundry, and attended to personal hygiene and grooming. *Id.* at 111-15.

On June 16, 2006, Polanco was examined by orthopedist Dr. Justin Fernando. *Id.* at 140. At the examination, Polanco complained of pain in her lower back, knees, right shoulder, and right hand. *Id.* Polanco said that at times she had no pain, and at other times she was severely incapacitated by pain. *Id.* Polanco acknowledged that she had no history of trauma preceding these pains, which she said had "evolved over a period of years" and had become "severe" in the previous three years." *Id.* Dr. Fernando

1

diagnosed the absence of a left ankle reflex, as well as degenerative disc disease/arthritis/disk herniations of the lumbosacral spine, subjective lumbosacral radiculopathy, and osteoarthritis of both knees. *Id.* at 143. Dr. Fernando ultimately concluded that, "[f]rom an orthopedic standpoint, [Polanco's] prognosis is stable." *Id.* at 143. Dr. Polanco added, "[t]here was mild limitation for bending at the waist. No other objective limitations were evident by today's exam." *Id.*

On June 26, 2006, Polanco was examined by opthamologist Dr. Stephen Doro. *Id.* at 145. Dr. Doro found that Polanco's best corrected vision was hand motion in the right eye and 20/60 in the left eye. *Id.* at 146. Based on Dr. Doro's examination, Dr. Lourdes Marasigan, a reviewer for the New York State Office of Temporary and Disability Assistance, found that Polanco had the visual capacity for "gross visual activities; sufficient for tasks involving typewritten material." *Id.* at 148. Dr. Marasigan noted that Polanco should avoid heights and hazardous machinery.

On July 24, 2006, Richard Weksberg of the New York State Office of Temporary and Disability Assistance filled out a physical residual functional capacity assessment for Polanco. *Id.* at 150. Weksberg found that Polanco had no exertional limitations or postural limitations, but she did have limited depth perception. *Id.* at 151-52. Weksberg also found that Polanco needed to avoid heights and dangerous hazards. *Id.* at 153.

On May 17, 2007, physiatrist Dr. Rashel Potashnik examined Polanco and identified an absence of vertebral tenderness. *Id.* at 162. She noted a full non-tender range of motion in the shoulders, elbows, wrists, and hands. *Id.* at 163. She identified x-ray evidence of "exaggerated kyphosis," commonly known as hunchback, as well as mild arthritic deformities. *Id.* at 162-63. Dr. Potashnik concluded that Polanco had osteoporosis. *Id.* at 163.

On May 15, 2007, opthamologist Dr. Thomas Materna examined Polanco. *Id.* at 166. Dr. Materna diagnosed glaucoma in both eyes. *Id.* at 167. Dr. Materna found that Polanco had no vision in her right eye, and 20/40 vision in her left eye. *Id.*

On June 6, 2007, medical consultant Dr. Robert Walsh concluded that Polanco possessed no exertional, postural, manipulative, or environmental limitations, but did possess visual limitations. *Id.* at 171-74. However, Dr. Walsh was not provided with any treating source's statement about Polanco's physical capacities. *Id.* at 176.

## II.   PROCEDURAL HISTORY

On April 26, 2006, Polanco applied for benefits, alleging a disability beginning September 15, 2005 based on glaucoma, back and knee pain, and left-sided swelling. *Id.* at 101. Polanco's claims were denied on August 1, 2006, and then again upon reconsideration on June 13, 2007. *Id.* Polanco's request for a hearing was granted, and a hearing was convened on June 2, 2008. *Id.*

One month after the hearing, the ALJ issued an initial decision in Polanco's case. The ALJ began by finding that Polanco's glaucoma constituted a severe impairment but Polanco's orthopedic impairments did not. *Id.* at 220-21. The ALJ proceeded to find, based on Dr. Materna's examination, that Polanco had become disabled because of her

visual problems.  *Id.* at 222-23.  Dr. Materna's examination took place on May 15, 2007.  The ALJ explained that "it is not unreasonable to assume that [Polanco's] decreased visual acuity existed at least three months prior to this examination."  *Id.* at 223.  Accordingly, the ALJ found that Polanco had become disabled beginning on February 25, 2007.  *Id.* at 225.  However, the ALJ found that Polanco's eye problems were not disabling during the period from September 15, 2005 until February 26, 2007.  *Id.* at 222-23.  Here, the ALJ relied on Dr. Doro's June 26, 2006 report and Dr. Marasigan's subsequent analysis.

Polanco challenged that ALJ's non-disability finding with the Appeals Council.  The Appeals Council found that the ALJ had erred when he found, without the benefit of vocational expert testimony, that Polanco's non-exertional limitations did not constitute a disability during the period from September 15, 2005 until February 26, 2007.  *Id.* at 221.  The Appeals Council proceeded to remand the case.

On October 21, 2010, the ALJ convened a hearing in accordance with the Appeals Council's remand directive.  At the hearing, Polanco testified that she used to work as an airplane cleaner.  *Id.* at 299.  The ALJ asked a vocational expert whether a person could work as an airplane cleaner if she had the limitations Weksberg said that Polanco suffered from: limited depth perception and a need to avoid heights and dangerous machinery.  *Id.* at 299-302.  The vocational expert testified that such a person could work as an airplane cleaner, a position she said was described in the Dictionary of Occupational Titles at Section 919.687-014.  The vocational expert described the Cleaner II job as follows: "cleaning the interior of transportation vehicles, using a broom, clothe, mop a vacuum or wisp.  Clean windows, also using cleansing compounds and a clothe or shammy.  Replenishes supplies."  *Id.* at 302.

The VE testified that airplane cleaners need to reach under seats to pick up debris.  *Id.* at 309.  The VE explained, "[t]ypically, they just pick up what is seen."  *Id.*  However, the VE went on to say that someone with a depth perception problem would have to feel under each seat.  *Id.* at 309-310.  Asked how someone who had depth perception problems could keep pace with a co-worker without depth perception problems, the VE testified that the person with depth perception problems "would learn to be quick about it, automatically use a vacuum instead of doing visual inspections."  *Id.* at 310. The VE then acknowledged that without this "modification," the person with depth perception problems could not keep pace with a co-worker without similar problems.  *Id.*

The new testimony did not change the ALJ's mind, and in a decision signed on November 23, 2010, the ALJ reaffirmed his prior conclusion that Polanco was not disabled from September 15, 2005 through February 26, 2007 but was disabled beginning on February 26, 2007.  *Id.* at 22-30.

### III.   LEGAL STANDARDS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits.  20 C.F.R. §§ 404.1520, 416.920.  In the first step, the Commissioner

determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A ("Part A"). If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the RFC to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

For purposes of this appeal, the court's review of legal issues is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The ALJ's factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Polanco had not engaged in substantial gainful activity since September 15, 2005, the alleged onset date of Polanco's disability. Tr. 25. At step two, the ALJ found that Polanco's glaucoma qualified as a severe impairment but Polanco's orthopedic problems did not. *Id.* at 25. At step three, the ALJ found that Polanco's impairments, alone and in combination, did not meet or equal the impairments listed in Part A. *Id.* At step four, the ALJ found, based on Dr. Materna's examination, that beginning on February 27, 2007, Polanco's visual problems were extreme as to be disabling. *Id.* at 27-28. However, the ALJ also found, that from September 15, 2005 until February 26, 2007, Polanco could perform the full range of work at all exertional levels, but she was limited by nonexertional limitations in the areas of visual acuity, depth perception, and exposure to heights and dangerous machinery. *Id.* at 26-27. Relying on record, the vocational expert's testimony, and the Dictionary of Occupational Titles, the ALJ concluded that from September 15, 2005 until February 26, 2007, Polanco was not disabled because she could perform her past work as an airplane cleaner. *Id.* at 26-28.

## V.     DISCUSSION

Polanco makes two arguments for why the ALJ's November 23, 2010 decision is not supported by substantial evidence. First, Polanco argues the ALJ erred when he found that Polanco's orthopedic problems did not qualify as severe impairments. Second, Polanco argues that the ALJ erred when he concluded that Polanco could have worked as an airplane cleaner from September 15, 2005 until February 26, 2007.

### A.     Substantial Evidence Supports the ALJ's Finding That Polanco's Orthopedic Problems Were Not Severe Impairments.

Polanco argues that the ALJ should have found that her orthopedic problems qualified as serve impairments for purposes of step two of the five step analysis. The Court disagrees.

At step two, plaintiffs bear the burden to demonstrate a severe "impairment" or "combination of impairments." 20 C.F.R. 404.1520(a)(4)(ii). "[A]n impairment is severe only if it significantly limits the claimant's physical or mental ability to do 'basic work activities.'" *Salles v. Comm'r of Social Sec. Admin*, 229 Fed. Appx. 140, 144 (3d Cir. 2007). "[O]jective medical diagnoses alone are insufficient to establish severity at step two; a claimant must also present evidence that these limitations significantly limited her ability to do basic work activities or impaired her capacity to cope with the mental demands of working." *Tollivers v. Astrue*, No. 11-6358, 2013 WL 427096, at *4 (D.N.J. Feb. 1, 2013).

In arguing that her orthopedic problems were severe, Polanco notes that Dr. Fernando identified a limitation associated with bending at the waist. Polanco also points to her lack of an ankle reflex, kyphosis, osteoporosis and osteopenia, as well as her diagnoses of degenerative disc disease/arthritis/disk herniations of the lumbosacral spine, subjective lumbosacral radiculopathy, and osteoarthritis of both knees.

The Court finds that substantial evidence in the record supports the ALJ's finding that Polanco's orthopedic problems were not severe because Polanco's problems did not significantly limit her ability to do basic work activities. While Dr. Potashnik diagnosed exaggerated kyphosis and mild arthritis, *id.* at 162-63, he did not state that these problems would significantly interfere with Plaintiff's work activities. As for Dr. Fernando, he concluded that Polanco's limitation for bending at the waist was only "mild." Tr. 143. Dr. Polanco found, based on his exam, that Polanco had no other objective limitations. *Id.* Weksberg and Dr. Walsh found no exertional limitations. *Id.* at 151-52, 171-74. Accordingly, substantial evidence supports the ALJ's step two finding that Polanco's orthopedic problems were not severe impairments.

**B.      Substantial Evidence Supports the ALJ's Finding That Polanco Could Perform Her Past Work as an Airplane Cleaner.**

Polanco makes two arguments for why the ALJ erred when he concluded that Polanco could have worked as an airplane cleaner during the period from September 15, 2005 until February 26, 2007. First, Polanco argues that the ALJ failed to conduct a "task-by-task comparison" between Polanco's residual functional capacity and the job of an airplane cleaner, which Polanco describes as requiring "bending on hands and knees to clean underneath seats." Pl.'s Br. at 21-22, ECF No. 14. Second, Polanco argues that the ALJ ignored testimony from the vocational expert. Here, Polanco claims that the ALJ stated that Polanco could only work as an airplane cleaner if Polanco was provided with an accommodation that would have allowed her to spend more time cleaning under seats than her co-workers. The Court disagrees with Polanco's arguments.

"At step four an ALJ may find a claimant not disabled if she can perform her past work either as it is generally performed in the national economy or as she actually performed it." *Hernandez v. Astrue*, 277 Fed. Appx. 617, 624-25 (7th Cir. 2008). In determining how a job is performed in the national economy, the ALJ can look to the Dictionary of Occupational Titles ("DOT"). *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009). "[I]f the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id.*

Here, the ALJ relied on the Dictionary of Occupational Titles in determining that Polanco work as an airplane cleaner as that job is performed in the national economy. In making this determination, the ALJ explicitly cited DOT # 919.687-014, which describes the position "Cleaner II." *See* DICOT 919-687-014, 1991 WL 687897. While Polanco argues that the ALJ failed to conduct a task-by-task comparison between her residual functional capacity and the description provided in DOT # 919.687-014, she offers no evidence that the ALJ failed to perform such a comparison. DOT # 919.687-014 provides that a Cleaner II job requires medium work, defined as exerting 20 to 50 pounds of force occasionally, and 10 to 25 pounds of force frequently. While Polanco was diagnosed with extreme kyphosis (hunchback), osteoporosis, and a mild limitation for bending at the waist, the state medical consultants found that these orthopedic issues did not give rise to exertional limitations. And while Polanco maintains that a job as an airplane cleaner would require her to be on her knees "virtually all day," Pl.'s Br. at 18 n.2, the DOT states that a Cleaner II position does not require crouching or crawling. Finally, while the DOT does say that stooping and kneeling are required up to 1/3 of the time, Polanco fails to establish that her "mild limitation" for bending at the waist and other ailments would preclude her from stooping and kneeling.

As for Polanco's second argument, the Court does not agree with Polanco's characterization of the vocational expert's testimony. Polanco argues that the vocational expert testified that she would need special treatment to keep pace with her co-workers. It is true that "when the SSA determines whether an individual is disabled for SSDI

purposes, it does *not* take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803, (1999). Here, the vocational expert testified that while co-workers "typically" did visual inspections under seats, Polanco could keep pace with them by using a vaccum, which the ALJ suggests would be readily available. The ALJ did not testify that an employer would have to provide Polanco with a special accommodation.

In sum, the Court finds that substantial evidence supports the ALJ's finding that Polanco could have worked as an airplane cleaner during the period from September 15, 2005 until February 26, 2007.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED.**

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 20, 2014**